IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES METTAUER                                                                 PLAINTIFF

v.                    Case No. 5:25-CV-____

WALMART, INC.                                                          DEFENDANT

## **ORIGINAL COMPLAINT**

COMES NOW James Mettauer, by and through his attorneys Elizabeth Rogers and Chris Burks of WH Law, for his Original Complaint against Walmart, Inc., he does hereby state and allege as follows:

## I. PRELIMINARY STATEMENTS

1. Plaintiff brings this action against the Defendant for violation under the Americans with Disabilities Act of 1990 ("ADA") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's discriminatory and retaliatory actions toward Plaintiff, resulting in his constructive termination.

2. Plaintiff received inequitable treatment and an adverse employment action as a result of his status as a disabled person with a disability that substantially limited a major life activity, and in retaliation for his complaints about this treatment.

3. Upon information and belief, Defendant has willfully and intentionally committed violations of ADA and ACRA, as described, *infra*.

## II. JURISDICTION AND VENUE

4. The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under ADA.

5. Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as the ADA claims alleged in this Complaint.

6. Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7. The acts complained of herein were committed and had their principal effect within the Fayetteville Division of the Western District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8. Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

9. The witnesses to ADA and ACRA violations alleged in this Complaint reside in this District.

### III. THE PARTIES

10. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11. Plaintiff is a resident and citizen of Benton County, Arkansas.

12. Plaintiff James Mettauer was hired by Defendant in June 2020, and he remained employed with them until he was constructively terminated on September 23, 2024.

13. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under ADA and ACRA.

14. Defendant is a foreign for profit corporation headquartered in Arkansas.

15. Defendant can be served through its agent for service, CT Corporation System.

16. Defendant is an "employer" within the meanings set forth in ADA and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV. FACTUAL ALLEGATIONS

17. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

18. Plaintiff was employed by Defendant as a Senior Specialist Technician starting on June 28, 2020.

19. Plaintiff has Attention Deficit Hyperactivity Disorder, a condition that at times impacts his ability to work, learn, and communicate.

20. During his employment, Plaintiff was harassed because of his disability, which he disclosed to Defendant; denied reasonable accommodations that he needed to perform in his condition; and retaliated against, to the degree his workplace became hostile to him and he was constructively terminated on September 23, 2024.

21. When Plaintiff started his employment with Defendant, his team members were not allowed to assign themselves to tickets, requiring Plaintiff to wait until tickets were assigned to him. Plaintiff was accused of not working enough, even though he had no control over the number of tickets assigned to him.

22. Plaintiff began requesting accommodations for his disability. He received some accommodations that were later rescinded, and he was verbally harassed when he attempted to use accommodations that he was granted.

23. Plaintiff managed his ADHD by using visual tools to stay organized and complete his tasks. His supervisors demeaned him and mocked him for doing so.

24. Plaintiff's supervisor repeatedly made harassing and demeaning comments in team meetings about Plaintiff not paying attention or not performing tasks, causing the team to fall behind.

25. Plaintiff requested specific trainings as a reasonable accommodation to perform his job duties, and he was not provided the trainings he requested.

26. Plaintiff made complaints to Defendant's Human Resources department and its Ethics department about the ongoing disability discrimination he experienced, but Defendant failed to appropriately investigate his complaints.

27. On one occasion during this process, Plaintiff was told by Defendant that his manager also had ADHD and he was able to manage, so Plaintiff should be able to perform his job without issues.

28. Defendant's HR and Ethics Department told Plaintiff to work with his management, even though Plaintiff had reported that his management was the source of his disability discrimination.

29. Plaintiff was told to "pull up his big boy pants and get to work" and to "stop making himself the victim," effectively telling him to stop complaining because Defendant was not going to address the ongoing disability discrimination Plaintiff experienced.

30. In addition to his internal complaints, in 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against Defendant.

31. Due to this charge and Plaintiff's previous complaints, Plaintiff was retaliated against.

32. Plaintiff was written-up on January 7, 2024, which resulted from Defendant's failure to accommodate him and Defendant's harassment and retaliation based on Plaintiff's disclosed disability and his complaints about disability discrimination.

33. Plaintiff's accommodation was rescinded by Defendant on June 12, 2024.

34. Plaintiff had requested and been approved for a day off on July 29, 2024, to take his daughter to an event.

35. Even though this day off was approved by Defendant, Defendant later rescinded this approval without any notification to Plaintiff. Plaintiff was placed on the no call, no show list, which was grounds for immediate termination.

36. Plaintiff was only able to avoid termination because another team manager emailed him and he forwarded the original approval email, showing this day off had been approved and that he was not notified that the approval was rescinded.

37. When Plaintiff complained to Defendant about this retaliatory behavior, which almost resulted in Plaintiff's termination, his supervisor told him, "everyone makes mistakes."

38. When Plaintiff escalated the complaint to Defendant's HR department, they told him they couldn't get in touch with him—even though Plaintiff received no emails, text messages, or phone calls from HR in response to his complaint.

39. In August 2024, Plaintiff received his second write-up, again the result of Defendant's failure to accommodate him and their ongoing discrimination and retaliation against Plaintiff.

40. Despite Plaintiff's ongoing attempts to resolve the disability discrimination and retaliation, Defendant took no actions based on his reports. The actions continued and grew worse,

with Plaintiff being continually harassed based on his disabilities, having his accommodation rescinded, and being written up for pretextual reasons.

41. As a result of the ongoing discrimination Plaintiff experienced as a result of his disabilities and in retaliation for his complaints about this treatment, Plaintiff was constructively discharged on September 23, 2024.

## V. FIRST CLAIM FOR RELIEF –ADA Claims

42. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

43. Plaintiff filed a timely charge with the EEOC alleging violations of Title I and Title V of the ADA by Defendant.

44. Plaintiff received a right to sue letter, and thus exhausted his administrative remedies.

45. Defendant engaged in unlawful employment practices at their facility in Bentonville, Arkansas, in violation of the Americans with Disabilities Act of 1990.

46. Specifically, and as detailed above, Plaintiff, who is disabled, was denied accommodations, subjected to a hostile workplace, and constructively terminated as a result of disability discrimination and retaliation.

47. Defendant employs non-disabled employees who were not subject to the same treatment that Plaintiff experienced during his employment.

48. Defendant's non-disabled employees were not denied accommodations for their disabilities, retaliated against by being written up or having their approval for time off rescinded, or subjected to constant harassment about their disabilities. As a result, Defendant's non-disabled employees were not forced to resign due to this treatment.

49. As a result, Plaintiff was treated disparately from Defendant's non-disabled employees.

50. At all relevant times, Plaintiff could perform the essential function of the position for which he was hired.

51. However, Plaintiff was terminated from his position within the relevant statutory period.

52. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

53. The unlawful employment practices complained of above were and are intentional.

54. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

55. Pursuant to Americans with Disabilities Act of 1990, Plaintiff is entitled to, and he seeks, an additional amount as compensatory and punitive damages equal to the sum of his lost wages or salary, benefits and/or other compensation denied or lost to him by reason of Defendant's violations of Title VII, plus any interest he is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of Title VII.

## VI. SECOND CLAIM FOR RELIEF – ACRA Claims

56. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

57. Plaintiff has timely filed a charge with the EEOC, received a right to sue letter, and has thus exhausted his administrative remedies.

58. Defendant engaged in unlawful employment practices at their facility in Bentonville, Arkansas, in violation of Ark. Code Ann. §§ 16-123-101, *et seq.*

59. Specifically, and as detailed above, Plaintiff, who is disabled, was denied accommodations, subjected to a hostile workplace, and constructively terminated as a result of disability discrimination and retaliation.

60. Defendant employs non-disabled employees who were not subject to the same treatment that Plaintiff experienced during his employment.

61. Defendant's non-disabled employees were not denied accommodations for their disabilities, retaliated against by being written up or having their approval for time off rescinded, or subjected to constant harassment about their disabilities. As a result, Defendant's non-disabled employees were not forced to resign due to this treatment.

62. As a result, Plaintiff was treated disparately from Defendant's non-disabled employees.

63. At all relevant times, Plaintiff could perform the essential function of the position for which he was hired.

64. However, Plaintiff was terminated from his position within the relevant statutory period.

65. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

66. The unlawful employment practices complained of above were and are intentional.

67. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

68. Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and he seeks, an additional amount as compensatory and punitive damages equal to the sum of his lost wages or salary, benefits and/or other compensation denied or lost to him by reason of Defendant's violations of ACRA, plus any interest he is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VII. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff James Mettauer respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A) A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(B) A declaratory judgment that Defendant's practices violate Americans with Disability Act of 1990 and the related regulations;

(C) Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(D) Judgment for damages pursuant to Americans with Disabilities Act of 1990, for all compensation, compensatory, and punitive damages owed to Plaintiff;

(E) An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(F) Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**James Mettauer, PLAINTIFF**

WH Law
Fayetteville Office
479.888.4357

By:    Elizabeth Rogers (ABN: 2023219)
       elizabeth.rogers@wh.law
       Chris Burks (ABN: 2010207)
       chris@wh.law

       Mailing Address:
       1 Riverfront Place, Suite 745
       North Little Rock, AR 72114